# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GEORGE BOERNER,

                      Plaintiff,

v.

LVNV FUNDING LLC and
MESSERLI & KRAMER PA,

                      Defendants.

Case No. 17-CV-1786-JPS

**ORDER**

In this case, Plaintiff, George Boerner ("Boerner"), alleges that Defendants, LVNV Funding LLC ("LVNV") and Messerli & Kramer PA ("Messerli & Kramer"), violated his rights under federal and state law when they sued him in Washington County Circuit Court on a defaulted credit card debt. Messerli & Kramer filed a motion to dismiss the complaint on April 23, 2018, (Docket #15), in which LVNV joined, (Docket #18). The motion is fully briefed and, for the reasons stated below, it will be granted in part and denied in part.

## 1. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that

possibility above a speculative level[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

In addition to their allegation that Boerner has not stated viable claims, Defendants also challenge the Court's subject-matter jurisdiction under Rule 12(b)(1). When faced with a jurisdictional challenge, the court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In this context, the court may also consider extrinsic evidence adduced by the parties. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

2.      **RELEVANT FACTS**

Boerner is a resident of West Bend, Wisconsin. LVNV is a debt buyer and debt collector, and Messerli & Kramer is a law firm that regularly works with LVNV to collect consumer debts. In Boerner's case, LVNV purchased a consumer credit card debt Boerner originally owed to Capital One.

On October 20, 2017, Boerner was served with a summons and complaint issued by the Washington County Circuit Court in a small claims action brought by LVNV to collect this debt, Case No. 17SC2061. Boerner did not recognize LVNV as one of his creditors. Prior to being served, Boerner had received no notice of assignment of any of his debts to LVNV. Further, he had not received any notice that any of his accounts were in default, nor was he afforded an opportunity to cure any such default.

James Kachelski ("Kachelski") is a lawyer who works for Messerli & Kramer. He represented LVNV in the Boerner suit. Boerner's claims are premised in large part on the idea that Kachelski was too overworked to devote any meaningful consideration to Boerner's case. Consequently, Boerner includes several allegations concerning Kachelski's case load.

As of December 14, 2017, Boerner reports that Kachelski was an attorney of record in 590 cases in Dane County, 116 of which were "open," meaning there was no judgment yet entered. Additionally, he was entered in 383 cases in Brown County, 45 of which were open; 449 cases in Waukesha County, 71 which were open; 329 cases in Racine County, 67 of which were open; and 2,909 cases in Milwaukee County, 607 of which were open. Boerner alleges that upon information and belief, Kachelski's case load is similar throughout all of Wisconsin's counties.

Boerner contends that even the closed cases must be considered as part of Kachelski's workload, as being "closed" only means that a judgment has been entered. For debt collection cases like those handled by Kachelski, much of the legal work occurs only after a judgment is entered, since at that time the lawyer has post-judgment collection avenues available to him, including garnishment, attachment, and other remedies.

Further, Wisconsin court records reveal that Kachelski had 31 return dates and hearings scheduled in three different counties on Friday, December 15, 2017; 72 court events scheduled for Monday, December 18, 2017, including two trials in one county and a motion hearing in a different county; 15 events on Tuesday, December 19, 2017, including a scheduling conference; 84 events on Wednesday, December 20, 2017, including two hearings in different counties; 6 events on Thursday,

December 21, 2017; and 21 events on Friday, December 22, 2017. That amounts to 249 hearings in only six days.[1]

Boerner acknowledges that many of these hearings were mere "return dates," meaning that personal appearance might not have been required, but he maintains that Kachelski, as counsel of record, would nevertheless have been obligated to monitor the outcome of the hearing, including whether an appearance or answer had been filed by the opposing party or, if not, whether service was properly made and a motion for default judgment should therefore be filed.

Boerner asserts that most debtors sued by Messerli & Kramer reasonably assume that a lawyer reviewed the matter and made a considered legal judgment about the validity of the debt and the legality of bringing a collection action. Based on Kachelski's case load and the amount of work he would reasonably need to do for each of his cases, Boerner concludes that Kachelski did not meet this expectation in his case. Indeed, according to Boerner, Kachelski did not meaningfully review any document sent to Boerner on behalf of LVNV in the Washington County suit before it was sent.

Boerner brings three claims based on Defendants' conduct with respect to the Washington County action. First, Boerner alleges that Defendants did not comply with Wis. Stat. § 425.105(1) because they accelerated the maturity of his debt and filed suit without first giving notice of his right to cure the default as provided in that statute. Boerner

---

[1]The complaint in this action was filed on December 22, 2017. This appears to be the reason Boerner examined Kachelski's December 2017 workload rather than his schedule in October 2017, when the Washington County complaint was filed.

claims that by suing him, LVNV falsely represented that it had a right to file suit against him when it knew that the right did not yet exist, in violation of the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427.104(1)(j). Second, based on precisely the same allegations, Boerner claims that the filing of the Washington County action violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(2)(A), because in so doing, LVNV falsely represented the legal status of his debt—*i.e.*, that the debt was ready to be sued upon. Finally, based on the allegations with respect to Kachelski, Boerner raises a separate claim under the FDCPA, 15 U.S.C. § 1692e(3), that Messerli & Kramer falsely represented or implied that an attorney was meaningfully involved in the collection suit when this was not true.

Boerner alleges that he suffered damages as a result of this misconduct. First, he suffered substantial emotional distress and anxiety at being sued on a debt he did not believe was in default and without notice that a suit would be forthcoming. Additionally, he suffered worry about the need to find and pay for a lawyer to defend him.

3.      **ANALYSIS**

Defendants have thrown the proverbial kitchen sink at Boerner's complaint. They contend that this suit violates the *Rooker–Feldman* doctrine, that Boerner lacks constitutional standing, that his claims are barred by principles of preclusion, and that his claims lack plausible merit. The only claim to fail under the weight of these attacks is Boerner's state-law claim, as the Court shall explain below.

3.1     *Rooker–Feldman*

First, Defendants cite the *Rooker–Feldman* doctrine, which says that a plaintiff may not sue in federal court for injuries inflicted on him by a

state-court judgment. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). To allow such a claim would impermissibly force federal district courts to sit in review of the decisions of state courts. *See Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996); *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995).

Defendants point out that in the Washington County suit, Boerner raised as a counterclaim the very same WCA right-to-cure claim he alleges in this case. (Docket #17-4 at 2–3). The state court granted Defendants' motion to dismiss that counterclaim. (Docket #17-5 at 3–7). Defendants accuse Boerner of trying to relitigate the claim here to escape the state court's adverse ruling.

The problem with that argument is that Boerner alleges no injury arising from a state-court judgment itself. The conduct Boerner challenges in this action arose prior to any order of any state court. Applying *Rooker–Feldman* necessitates a distinction between "a federal claim alleging injury caused by a state court judgment," which is barred, and "a federal claim alleging a prior injury that a state court failed to remedy," which is not. *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998); *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996) (*Rooker–Feldman* does not bar a claim that is "independent" of the state-court judgment). Boerner's case falls within the latter category. For that reason, the relevant framework to assess the potential effect of the state court's dismissal order is preclusion, not *Rooker–Feldman*. *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018).

Similarly unavailing is Defendants' contention that the present suit and the state court's order are "inextricably intertwined," giving rise to

the *Rooker–Feldman* bar despite the fact that there is no injurious state-court judgment. (Docket #16 at 6–8). Just this year, the Court of Appeals in *Milchtein* emphasized that courts should not bandy about the phrase "inextricably intertwined" to forestall all federal litigation that touches upon matters in state courts. *Id.*; *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014). The key consideration is instead "whether the federal plaintiff seeks the alteration of a state court's judgment." *Milchtein*, 880 F.3d at 898. That is not what Boerner is trying to do here, so *Rooker–Feldman* does not apply.

### 3.2    Standing

Next, Defendants claim that Boerner lacks standing to pursue this action. Article III of the Constitution limits the judicial power to the resolution of "cases" and "controversies," which in turn requires a federal plaintiff to demonstrate that he has "standing," or a viable legal wrong committed by the defendant and redressable by a court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish his standing, Boerner must show (1) that he suffered an injury in fact, (2) that there is a causal connection between his injury and Defendants' alleged misconduct, and (3) that a favorable decision from this Court will redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, "the plaintiff must 'clearly. . .allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Boerner's allegations satisfy each element of standing. First, he has suffered an injury in fact, which arises from "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Defendants, citing *Spokeo*, say that Boerner alleges injury only to a

"procedural right," which is not sufficiently concrete to support standing. True, *Spokeo* teaches that violation of a procedural right conferred by statute is not automatically sufficient to confer standing, *Spokeo*, 136 S. Ct. at 1549, but here Boerner has alleged that Defendants' statutory violations gave rise to real harm. First, with respect to the right-to-cure claims, Boerner alleges he suffered a lawsuit that had not properly been brought, with its attendant legal costs, anxiety, and worry. Similarly, on the meaningful-involvement claim, Boerner asserts that he experienced amplified anxiety and fear based on the false representation that an attorney had made a considered legal judgment that the Washington County suit against him had merit. *See Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up."). Thus, unlike *Spokeo*, here the purported procedural violations are only the premise, not the sum total, of the harm to Boerner. *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018).

Second, Boerner's allegations establish that his injury is fairly traceable to Defendants' wrongdoing. *Lujan*, 504 U.S. at 560. In this connection, Boerner alleges that he

> has suffered actual damages, including but not limited to emotional distress at being sued on a debt he did not believe could be the subject of a lawsuit at that time, and without notice that any such suit might be forthcoming. Boerner has suffered substantial distress including difficulty concentrating, anxiety over the lawsuit, worries about whether he could find and afford a lawyer, and other substantial distress and harm.

(Docket #1 at 6–7). Defendants are correct that Boerner could have been more specific about whether Kachelski's lack of meaningful involvement

caused him injury. Yet the Court, construing his allegations generously as it is required to do at this stage, finds that he has sufficiently alleged harm from both the allegedly improper filing of the Washington County suit and Kachelski's lack of involvement therein. Both contributed to cause his anxiety, his concentration difficulties, and his need to find and pay for a lawyer to defend him. Moreover, receiving false or misleading information from debt collectors is the very type of harm which Congress designed the FDCPA to prevent. *Pogorzelski v. Patenaude & Felix APC*, Case No. 16–C–1330, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017).

These allegations make Boerner's case distinguishable from *Cheslek v. Asset Acceptance Capital Corp.*, Case No. 1:16-cv-1183, 2017 WL 7370983, at *3 (W.D. Mich. Dec. 22, 2017), cited by Defendants, where the plaintiff premised his FDCPA claim on procedural errors in connection with filing state debt collection suits but failed to mention how he was personally affected by that conduct. In this case, Boerner alleges tangible personal and pecuniary harm, making it unnecessary to consider whether violations of procedural rights alone give him standing. *See Satran v. LVNV Funding, LLC*, 17-cv-896-jdp, 2018 WL 2464486, at *2 (W.D. Wis. June 1, 2018).[2]

Finally, Boerner has shown that this Court may redress his injury. *Lujan*, 504 U.S. at 561. Defendants contend that redressability is lacking because Boerner will have to defend the Washington County suit anyway, regardless of whether Kachelski was meaningfully involved. (Docket #16 at 12–13). This misses the point. Boerner's federal action seeks monetary

---

[2]Plaintiff filed a copy of the *Satran* decision in a motion to supplement the record. (Docket #26). The Court located the case during its own research and will therefore deny the motion as moot.

redress for Defendants' unlawful debt collection practices. Even if Defendants succeed in proving to the Wisconsin court that they are entitled to recover on Boerner's credit card debt, this Court could find that the lack of attorney involvement constituted a violation of Boerner's FDCPA rights. The two are entirely distinct.

### 3.3 Preclusion

The Court noted above that Boerner raised his WCA claim in this case as a counterclaim in the Washington County action.[3] That counterclaim was dismissed by the trial court on Defendants' motion in a decision dated March 29, 2018. In its ruling, the state court held that Boerner's right-to-cure theory lacked merit for two reasons. First, giving notice of the right to cure is a mere procedural prerequisite to filing a collection action and is not inherent in the right to collect the debt. (Docket #17-5 at 4). Thus, LVNV did not violate the WCA by trying to enforce a right that did not exist; the right to collect the debt did exist, but there may have been a procedural misstep in LVNV's effort to pursue a judicial remedy. *See id.* Second, the state court found that under the WCA, the remedy for such a technical foible was not an affirmative claim for damages. *Id.* at 7. Rather, "the appropriate remedy for the alleged failure

---

[3]In the state court, Boerner alleged that LVNV violated Wis. Stat. § 427.104 by failing to provide a notice of assignment of his credit card debt and by failing to provide notice of and an opportunity to cure the default. (Docket #17-4 at 2–3). In this Court, he advances only the latter theory as part of his legal claims, although he mentions in his factual allegations that he was not provided a notice of assignment. (Docket #1 at 5–6). Curiously, at the end of his brief on Defendants' motion, Boerner defends a claim for lack of notice of assignment despite the fact that he omitted such a claim from his complaint. *See* (Docket #22 at 39–40). If Boerner wishes to allege such a claim, he must do so with leave of the Court in an amended complaint. For now, poor draftsmanship means that there is no such claim presently pending.

of LVNV to give proper notice of default and a right to cure is a dismissal of LVNV's claim." *Id.*

Defendants assert that this ruling precludes Boerner's right-to-cure claims under both the WCA and FDCPA. Boerner disagrees, arguing that the state court's decision is not final and is presently the subject of a motion for reconsideration. Additionally, suggests Boerner, even if the WCA claim is barred by the state court's decision, the FDCPA claim does not fall with it despite being premised on the same underlying conduct. (Docket #22 at 11).

There are two types of preclusion.[4] Claim preclusion, traditionally called *res judicata*, arises when the earlier case involved the same parties or their privies and the same causes of action, and the case was resolved by a final judgment on the merits. *Jensen v. Milwaukee Mut. Ins. Co.*, 554 N.W.2d 232, 234 (Wis. Ct. App. 1996). When these elements are satisfied, claim preclusion operates to bar not only the claims actually decided in the earlier case but also any other claim which could have been brought therein. *Id.* The purpose of the doctrine is to discourage claim splitting and conserve judicial resources. *See N. States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995).

Issue preclusion is narrower. It arises when an issue was actually litigated and finally determined in the earlier case, and the interests of the party against whom preclusion is sought were sufficiently represented in that prior case. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 594 N.W.2d 370,

---

[4]Because the Court is assessing the preclusive effect of a ruling of a Wisconsin state court, it looks to the law of Wisconsin to determine the nature and scope of preclusion. 28 U.S.C. § 1738; *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

374 (Wis. 1999); *Lindas v. Cady*, 515 N.W.2d 458, 464 (Wis. 1994). Thus, issue preclusion does not bar other claims that might have been brought in the prior proceeding, but in some instances it can apply even when the parties in the prior suit are not identical to those in the instant suit. *Montana v. United States*, 440 U.S. 147, 153 (1979). To determine whether issue preclusion bars a litigant's claim, Wisconsin courts apply a two-step analysis: (1) they ask whether issue preclusion can, as a matter of law, be applied and, if so, (2) whether the application of issue preclusion would be fundamentally fair. *Rille v. Physicians Ins. Co.*, 728 N.W.2d 693, 702–03 (Wis. 2007).

Defendants advance both claim and issue preclusion in an effort to forestall Boerner's right-to-cure claims. Their reliance on claim preclusion is misplaced, however, as it requires the entry of a final judgment in the first action. There has been no final judgment in the Washington County case, either in whole or in part. *See* Wis. Stat. § 806.01; *Menomonie Farmers Credit Union v. Bettendorf*, 438 N.W.2d 597, 1989 WL 26498, at *1 (Wis. Ct. App. 1989).

Nevertheless, the finality requirement is often relaxed when considering issue preclusion. Such relaxation often arises in instances like these, where it is obvious that a state-court loser has fled to federal court hoping for a different result. Several leading authorities, including Wright & Miller and the Restatement, espouse this view. Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4434 (2d ed.); Restatement (Second) of Judgments §§ 13, 27 (1982). The Seventh Circuit has also adopted it. *Miller*

*Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979);

*Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir. 1995).[5]

Under this approach, the key inquiry is whether the prior decision is sufficiently procedurally firm that the issue in question will not be litigated again in that court. *Id.* As the Restatement commentary explains,

> the court should determine that the decision to be carried over was adequately deliberated and firm even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

Restatement (Second) of Judgments § 13 cmt. g.

The Washington County court's dismissal of Boerner's WCA right-to-cure counterclaim bears many hallmarks of finality. First, it was reached after the parties were fully heard on the matter. Second, the court offered a reasoned basis for its decision, finding the lack of a damages

---

[5]The parties and the Court have located no decision of the Wisconsin Supreme Court on this issue. Nevertheless, given the widespread acceptance of this approach to issue preclusion in recognized treatises and federal appellate decisions, the Court concludes that the Wisconsin Supreme Court would be most likely to adopt it as well. Indeed, that court noted in *Rille*, 728 N.W.2d at 704 n.24, that "Wisconsin courts have consistently relied on the Restatement (Second) Judgments for guidance when deciding questions related to issue preclusion." Likewise, in *Michelle T. v. Crozier*, 495 N.W.2d 327, 330 (Wis. 1993), the court observed that "[f]ormalistic requirements" in the application of issue preclusion "have gradually been abandoned in favor of a looser, equities-based interpretation of the doctrine." Thus, there is no reason to think that Wisconsin courts would not take a flexible approach to finality.

remedy under the WCA for a right-to-cure violation was an "insuperable obstacle" to the claim. *Miller Brewing Co.*, 605 F.2d at 996.

Finally, although the decision was not immediately appealable, it was procedurally definite, as it effected immediate dismissal with prejudice of the counterclaim. This is so despite Boerner's pending motion for reconsideration. Such motions do not represent a second bite at the apple for losing litigants. Instead, this highly discretionary procedure exists to remedy excusable neglect, previously undiscovered evidence, or egregious legal errors. *See* Wis. Stat. § 806.07(1); *Werner v. Hendree*, 795 N.W.2d 423, 434 (Wis. 2010). This Court detects no such problems in the Washington County decision. Indeed, while Boerner suggests that he and others like him will take the right-to-cure issue all the way to the Wisconsin Supreme Court, at present the trial court in Washington County is likely to follow the decision of the Wisconsin Court of Appeals in *Security Finance v. Kirsch*, Appeal No. 2017AP1408, 2018 WL 1756126, at *2 (Wis. Ct. App. Apr. 11, 2018), which adopted the same view of the WCA's remedial structure. Thus, the motion for reconsideration is all but doomed, and does not defeat preclusion in this case.

In the end, all the circumstances present in this case indicate that the state court's dismissal is sufficiently "firm and stable" that it can be considered "the 'last word' of the rendering court." Restatement (Second) of Judgments § 13, cmt. a. Certainly the ruling was not "avowedly tentative." *Id.* The Court finds that the Washington County dismissal order is sufficiently "final" to support the application of issue preclusion.[6]

---

[6]There is a suggestion in some preclusion cases that orders giving rise to preclusion must dispose of all litigation as to one or more parties. *See In re Lisse*, 565 B.R. 903, 911 (Bankr. W.D. Wis. 2017) (citing *Anchor Sav. & Loan Ass'n v.*

With the issue of finality settled, the Court finds that the other legal elements of issue preclusion are easily satisfied in this case. First, the parties are identical.[7] Second, the pertinent issues of law were actually litigated and determined by the state court and were essential to its dismissal. Two such issues were decided: (1) notice of the right to cure is not integral to the right to collect the debt but only a condition precedent to accelerating the debt's maturity or filing suit thereon; and (2) failure to give notice of the right to cure does not give rise to an affirmative damages claim but only exists as a defense to a collection suit.

Having found that issue preclusion as to these two issues is proper as a matter of law, the Court next considers how the resolution of those two issues affects the claims in this action and, relatedly, whether the application of preclusion is equitable in this case. Disposition of the second issue identified above precludes Boerner's instant claim under the WCA, as this Court is bound by the state court's conclusion that his remedy under state law is a dismissal defense, not a claim for damages. Thus, his WCA claim must be rejected notwithstanding the disagreement

---

*Coyle*, 435 N.W.2d 727, 729–30 (Wis. 1989)). That requirement is met here in spirit, for although Boerner remains a party defendant in the Washington County action, all of his counterclaims—including the right-to-cure claim, the notice-of-assignment claim, and a more generalized claim that LVNV engaged in unconscionable debt collection practices—were dismissed in the trial court's recent decision. *See* (Docket #17-5 at 11).

[7]Boerner notes that Messerli & Kramer is not a party to the Washington County suit but is acting only as counsel to LVNV. (Docket #22 at 12). This is true but irrelevant; Messerli & Kramer raises no objection to its being bound by the determination of the Washington County trial court. Moreover, identity of parties is not strictly required for the application of issue preclusion. *Lindas*, 515 N.W.2d at 463. The identity-of-parties requirement exists to protect parties from being bound by a decision in the first action when their interests were not sufficiently represented in that action. *Michelle T.*, 495 N.W.2d at 332.

percolating in the courts about its viability. *Compare Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 969 (W.D. Wis. 2013), *with Satran*, 2018 WL 2464486, at *5–6. The decisions on both sides are informative on the theory Boerner advances in this case, but the matter having been decided against Boerner himself once, he cannot relitigate it in a different action.

The application of issue preclusion to Boerner's WCA claim is also fundamentally fair. This analysis relies on several factors, including:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Michelle T.*, 495 N.W.2d at 330–31. The evaluation of these factors is committed to the court's discretion, remembering that the fairness determination is a case-by-case assessment. *Rille*, 728 N.W.2d at 707.

On the whole, these factors militate in favor of preclusion. Only the first weighs against that result, as Boerner has not yet had the ability to obtain review of the adverse ruling in Washington County. However, the pertinent issue of law decided in state court—whether a damages claim arises under the WCA for failure to give notice of the right to cure—is identical to that presented here, and other than a few lower-court

decisions taking sides on the matter, there have been no sea changes in the law. Further, Boerner and Defendants had a full and fair opportunity for argument before the Washington County court, and there is no reason to doubt the quality of the state court's careful consideration of the issues. Additionally, the parties' burdens at this stage of this case are identical to those at which Boerner's right-to-cure counterclaim was dismissed, so Defendants' victory in state court was not the result of a lowered burden of persuasion. Finally, notwithstanding the technicalities of preclusion doctrine that have been explored herein, at its core the application of preclusion in this case is equitable, as it appears Boerner has come running to federal court after suffering a defeat in state court on an identical issue. This cannot be tolerated. Consequently, the Court finds that issue preclusion should be applied to bar Boerner's WCA claim.

The result is different with respect to the analogous FDCPA right-to-cure claim, however. Defendants submit that the state court order precludes Boerner's federal claim as well as his WCA claim because the core issue is the same: whether a damages action can be maintained based on a failure to give notice of the right to cure. *See* (Docket #16 at 15). But Boerner is correct that the ruling on remedies under the WCA is of no consequence for purposes of the FDCPA. The federal statute clearly affords a damages remedy for conduct that violates its proscriptions. 15 U.S.C. § 1692k(a). The FDCPA thus functions as a sword for aggrieved plaintiffs, whereas the Washington County court and *Kirsch* showed that the WCA's right-to-cure requirement is intended only as a shield. *See Kirsch*, 2018 WL 1756126, at *4. The Court is bound by the state court's view of the remedies available under the WCA, but it is not bound to follow the same path with respect to its federal counterpart, which has a

different structure and focus. In the parlance of Wisconsin's fundamental fairness analysis, the differences between the WCA and FDCPA make the application of preclusion to the FDCPA claim less equitable than as applied to the WCA claim. *Michelle T.*, 495 N.W.2d at 330.

Moreover, the state court's ruling that notice of the right to cure is not integral to the right to collect the debt is not dispositive. It may be that for purposes of the WCA, the state court was correct in finding that LVNV was not trying to enforce a right that did not exist. But the FDCPA broadly prohibits falsehoods or misrepresentations concerning the legal status of a debt. *See* 15 U.S.C. § 1692e(2)(A). In this action, Boerner's claim is not that the right to collect the underlying debt did not exist, but that the right to sue on the debt had not been perfected because notice of the right to cure had not been given. *See* (Docket #1 ¶ 28). Defendants misrepresented the legal status of the debt inasmuch as filing the action falsely represented that all of the prerequisite conditions had been satisfied. On that understanding, the FDCPA right-to-cure claim is not precluded by any ruling of the state court, as the legal theory here is meaningfully different and Boerner did not have the opportunity to argue the nuances of his FDCPA theory to the state court. *Michelle T.*, 495 N.W.2d at 331; *see also Johnson v. LVNV Funding, LLC*, No. 13–C–1191, 2014 WL 4852027, at *3 (E.D. Wis. Sept. 29, 2014) (finding that filing a suit without first giving notice of right to cure could be considered unfair or unconscionable, in violation of Section 1692f).

For these reasons, the Court finds that the Washington County Circuit Court's order dismissing Boerner's WCA counterclaim precludes

the state-law claim asserted in this case but has no preclusive effect on his analogous FDCPA claim.[8]

### 3.4 Failure to State a Claim

Boerner's WCA right-to-cure claim is barred by principles of preclusion. His analogous claim under the FDCPA is not, nor is his FDCPA claim concerning Kachelski's lack of meaningful involvement in the state court action. As a result, the Court must consider Defendants' arguments that these two claims lack plausible legal merit.

### 3.4.1 Materiality

Defendants' opening salvo is that the purported FDCPA violations were not material to any of Boerner's rights or decision-making and therefore are not actionable. In the Seventh Circuit, a plaintiff asserting a claim under Section 1692e must allege facts showing that the false or misleading representation or omission was material, meaning it had the ability to influence an unsophisticated consumer's decision-making. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016). For both of Boerner's federal claims, this requirement is easily satisfied. An unsophisticated consumer might be influenced to hire counsel or take more aggressive defensive action when he is sued on a debt which he thinks cannot be sued upon because of a failure to give notice of the right to cure, or when he is sued by a corporation with the assistance of counsel whom he believes has an

---

[8]The state court's ruling on various legal issues surrounding the right to cure has no bearing on Boerner's meaningful involvement claim, so the Court will not discuss it in this context. The only avenue by which preclusion could bar the meaningful involvement claim would be claim preclusion, but as noted above, there has been no final judgment in the Washington County case sufficient to support the application of claim preclusion.

active, meaningful role in the case. The question is not, as Defendants put it, whether Boerner's actual response to the state-court complaint would have been different, nor whether some egregiously awful thing had happened to him, such as being tricked into paying a debt he did not owe. *See* (Docket #16 at 20). Instead, it is enough for present purposes that without these additional layers of deception, Boerner might have seen fit to defend the relatively small claim on his own behalf or with lessened vigor. *Lox*, 689 F.3d at 827 (finding materiality where debt collector falsely threatened recovery of attorney's fees in state collection action, which could have affected the debtor's decision to pay or contest the debt); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (noting that material violations of the statute affect the consumer's right to "choose intelligently" between alternatives).

### 3.4.2 Right-to-Cure Claim

The Court next evaluates the merit of the right-to-cure FDCPA claim. This has been touched upon above, but a few remaining arguments must be addressed. To assess this claim, one must begin with Wis. Stat. § 425.105, which creates a debtor's right to cure. That statute provides, in relevant part, that "[a] merchant may not accelerate the maturity of a consumer credit transaction" or "commence any action" on a debt unless the debtor is first given notice of his right to cure the default and he fails to do so within fifteen days. Wis. Stat. § 425.105(1). This Section further provides that the right to cure does not exist "if the following occurred twice during the preceding 12 months: (a) [t]he customer was in default on the same transaction or open-end credit plan; (b) [t]he creditor gave the customer notice of the right to cure such previous default in accordance

with [§] 425.104; and (c) [t]he customer cured the previous default." *Id.* § 425.105(3).

As has been explained, Boerner's claim is that LVNV misrepresented that it could file a suit—or that it could win the suit—because it had not first given notice of the right to cure or an opportunity to do so. According to Boerner, this violated Section 1692e(2)(A) of the FDCPA, which prohibits any false representation of the legal status of any debt. 15 U.S.C. § 1692e(2)(A). More broadly, Section 1692e proscribes "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e.

Defendants attack Boerner's right-to-cure claim in a number of ways, but none have merit. First, Defendants say that there can be no damages action that arises from failure to give notice of the right to cure. The Court has evaluated this argument already, finding that the remedial structures of the WCA and FDCPA are distinct in this regard. *See supra* Part 3.3.[9]

Defendants' other arguments fare no better. They claim that even if Boerner's right-to-cure theory has legal merit, he was not entitled to cure because he had missed two payments in the twelve months preceding the filing of the Washington County suit. (Docket #16 at 24–26). Alternatively,

---

[9]Many of Defendants' cited cases take the view that the FDCPA does not exist to remedy violations of state procedural rules. *See Skibbe v. U.S. Bank Trust, N.A.*, Case No. 16 C 192, 2018 WL 905522, at *6 (N.D. Ill. Feb. 15, 2018). Defendants do not squarely raise such an argument against Boerner's right-to-cure claim, but it is worth noting that the statutory violation here is a critical condition precedent to filing suit, not merely the violation of some technical pleading rule, such as the absence of an attorney's signature or the misstatement of a party's name. *See Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053,at *4 (N.D. Ill. Aug. 10, 2015) (allowing FDCPA claim based on misrepresentations about the legal status of the debt in a state-court complaint).

Defendants assert that they did in fact provide him notice of his right to cure. *Id.* at 26–27. Additionally, Defendants contest Boerner's assertion that they accelerated the maturity of the debt as opposed to simply aggregating missed minimum payments. *Id.* at 28.

All of these contentions rely on extraneous documents which the Court cannot consider in the present context, including billing notices from the original creditor. *See Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000). Those documents cannot be thrown into the mix at this stage because they are not referenced in the complaint, they are not central to the claims in the narrow sense envisioned by the Seventh Circuit, and their authenticity has been challenged. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). What is properly before the Court is Boerner's affirmative allegation that he was not in default, he had received no notice of any default from anyone, and he was therefore entitled to an opportunity to cure but received no statutorily required notice of the same. *See* (Docket #1 ¶ 28). If Defendants wish to contest the factual basis for those allegations, they may do so at summary judgment. For now, the motion to dismiss the FDCPA right-to-cure claim must be denied.

### 3.4.3   Meaningful Involvement Claim

Boerner's other FDCPA claim has received little treatment thus far. As explained above, Boerner alleges that Kachelski could not devote meaningful attention to the Washington County suit given the press of matters in which he is counsel of record. Consequently, one can infer that he did not, in fact, meaningfully participate in the preparation or filing of the lawsuit, and that Defendants thereby violated Section 1692e(3), which prohibits "[t]he false representation or implication that any individual is

an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

Defendants first counter that Boerner cannot premise a meaningful involvement claim on the filing of a state court complaint. (Docket #16 at 20–21). The Seventh Circuit held two years ago that Section 1692e applies to representations and omissions in state court complaints and other filings in state court proceedings. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810–11 (7th Cir. 2016). So much for that argument.

Defendants persist, arguing that FDCPA regulation of state-court complaints would limit their access to the courts because they cannot communicate with a third party—such as the state court—about the consumer's debt without his consent. *See* 15 U.S.C. § 1692c(b). But this argument also fails, as the rules governing action in Wisconsin courts expressly authorize the filing of civil lawsuits like the Washington County action. *See id.* (providing that a communication with a third party can be authorized with "the express permission of a court of competent jurisdiction"). Notably, Boerner does not argue that the filing of the state collection case itself violated Section 1692c(b).

Next, Defendants suggest—though their winding, circular argument is hard to follow—that Boerner could only sue for an affirmative false statement in a state-court complaint, rather than a false implication of attorney involvement or false implication of satisfaction of the right-to-cure requirement. (Docket #29 at 8–11). They maintain that Boerner should have sought redress for violations of state procedural rules from the state court, including seeking relief under Wis. Stat. § 802.05(2), the state's version of Federal Rule of Civil Procedure 11. (Docket #16 at 21).

But the FDCPA can and does offer relief for violations of certain kinds of state laws, particularly when, as here, violations of those laws make it appear to the unsophisticated consumer that he is rightly being sued when he was denied an essential opportunity to cure his default, or when an attorney is prosecuting the case against him (having made a legal judgment about the case's prospects) when that attorney is not involved. *See Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (false allegations in state court complaint were actionable as misrepresentations of the legal status of the debt). In other words, here the underlying state-law violations are material to the viability of the debt collection efforts themselves and are not mere attacks on the form or clarity of the state pleadings as governed by state procedural rules. *See Beler v. Blatt, Hasenmiller, Leibker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). To the extent some district courts believe that only affirmative falsehoods make a Section 1692e claim when lodged against a state-court complaint, this Court declines to follow them. *See Washington v. N. Star Capital Acquisition, LLC*, No. 08 C 2823, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 15, 2008).[10]

Finally, Defendants argue that Boerner's allegations regarding Kachelski's caseload are too conclusory to support a meaningful involvement claim. Again, they are incorrect. A debt collector violates

---

[10]Defendants also argue that Boerner has not stated a claim for use of "deceptive means" to collect a debt, in violation of Section 1692e(10). (Docket #16 at 21); 15 U.S.C. § 1692e(10). Boerner does not purport to make such a claim, so the argument goes nowhere. To the extent Defendants believe that Kachelski was within his rights to file the Washington County action because no notice of right to cure was required, they miss the point of Boerner's meaningful involvement claim. For that claim, it matters not how the right-to-cure issue is resolved, because Boerner's allegation is that no matter how meritorious the state collection action might be, Kachelski impermissibly represented that he had some meaningful involvement in preparing and prosecuting it.

Section 1692e(3) when a communication purports to come from an attorney who in reality was not involved in or supervising the process of creating and sending the communication. *See Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002); *Avila*, 84 F.3d at 229. In this instance, it can be inferred from Boerner's allegations regarding Kachelski's workload that he did not have sufficient time to render a professional legal judgment about the merit of the Washington County suit prior to its being filed. This is a widely accepted approach for challenging mass-produced dunning letters purportedly signed by attorneys, *Nielsen*, 307 F.3d at 638, and nothing in the recent *Marquez* decision suggests that the theory cannot be extended to state-court complaints.

Boerner's detailed allegations concerning how overworked Kachelski appeared to be at the time the Washington County suit was filed stands in sharp contrast to the one-line assertion in *Morales v. Pressler & Pressler, LLP*, Civil Action No. 15–236(JLL), 2015 WL 1736350, at *3 (D.N.J. Apr. 16, 2015), cited by Defendants, that the attorney filed a collection action without first exercising professional judgment concerning the merits of the suit. That assertion is present in Boerner's complaint, but it is corroborated by meticulous allegations as to why this failure of diligence arose. Moreover, the Court is not persuaded by the reasoning in *Richardson v. Midland Funding, LLC*, Civil No. CCB–13–1356, 2013 WL 6719110, at *8 (D. Md. Dec. 18, 2013), also cited by Defendants, where the court found that allegations of extreme attorney workload were insufficient to support a meaningful involvement claim. This Court finds that a reasonable inference to be drawn from Boerner's allegations is that Kachelski's time and personal resources were too thinly spread for him to devote adequate attention to the Washington County lawsuit prior to its

being filed. Further, unlike *Richardson*, there were no other lawyers on the case with Kachelski, suggesting that no attorney in fact devoted meaningful thought to the matter. *Id.* Asking Boerner to allege more would be inconsistent with the lenient standard of review applied at this stage. The Court will, therefore, deny the motion to dismiss this claim.

**4.      CONCLUSION**

For the reasons stated above, the Court finds that Boerner's state-law claim is barred under the doctrine of issue preclusion. His two federal claims are not, and both survive Defendants' other legal challenges. Thus, Defendants' motion to dismiss must be granted in part and denied in part.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to supplement the record (Docket #26) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant LVNV Funding LLC's motion to join in the motion to dismiss filed by Defendant Messerli & Kramer, PA (Docket #18) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Messerli & Kramer, PA's motion to dismiss Plaintiff's complaint (Docket #15) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein.

Dated at Milwaukee, Wisconsin, this 25th day of July, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge